## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

BRENDA LYNN GEIGER, EMILY SCOTT,
JENNIFER ZHARINOVA, JESSICA 'JESSA'
HINTON, LINA POSADA, LUCY PINDER,
PAOLA CANAS, SANDRA VALENCIA,
TIFFANY TOTH, and JESSICA ROCKWELL,

     *Plaintiffs*,

v.

ABARCA FAMILY INC. d/b/a LA RUMBA
RESTAURANT & NIGHTCLUB
c/o Candelario Abarca, Registered Agent
4644 Jefferson Davis Highway,
Richmond, Virginia 23234

and

DOES 1 THROUGH 5,

     *Defendants.*

Case No.  3:21cv00771

## COMPLAINT

    Plaintiffs BRENDA LYNN GEIGER, EMILY SCOTT, JENNIFER ZHARINOVA,

JESSICA 'JESSA' HINTON, LINA POSADA, LUCY PINDER, PAOLA CANAS, SANDRA

VALENCIA, TIFFANY TOTH, and JESSICA ROCKWELL, (collectively, "Plaintiffs"), by

and through their undersigned counsel, as and for their Amended Complaint ("Complaint")

against Defendants ABARCA FAMILY INC. d/b/a LA RUMBA RESTAURANT &

NIGHTCLUB a/k/a LA RUMBA; and DOES 1 THROUGH 5, (collectively "Defendants")

respectfully allege as follows:

## BACKGROUND

    1.    This is an action for damages and injunctive relief relating to Defendants'

misappropriation, alteration, and unauthorized publication and use in advertising of images of

Plaintiffs, each of whom is a well-known professional model, to promote their night club, La Rumba Restaurant & Nightclub located in Richmond, Virginia ("La Rumba" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of Plaintiffs' statutory rights of publicity, Va. Code Ann. § 8.01-40, which prohibits the unauthorized use of a name or picture of any person; b) business conspiracy, in violation of Va. Code Ann. § 18.2-499; and c) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because it is a civil action founded on a claim arising under the laws of the United States.  Further, the Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.

5.      As set forth immediately below, Plaintiffs are, and, at all times relevant to this action, have been, professional models who reside throughout the United States.

6.      According to publicly available records, Defendant LA RUMBA RESTAURANT & NIGHTCLUB is a corporation formed under the laws of the state of Virginia, with its principal place of business located at 4644 Jefferson Davis Highway, Richmond, Virginia 23234. ABARCA FAMILY INC operates La Rumba Restaurant & Night

2

Club also known as La Rumba, which is located at 4644 Jefferson Davis Highway, Richmond, Virginia 23234.

       7.      Venue is proper in the Richmond Division of the Eastern District Court because Defendant La Rumba's principal place of business is in the city of Richmond, Virginia.

**PARTIES**

*Plaintiffs*

       8.      Plaintiff Brenda Lynn Geiger ("Geiger") is a well-known professional model, and a resident of Onondaga County, New York.

       9.      Plaintiff Emily Scott ("Scott") is a well-known professional model, and a resident of Forest Lodge, Australia.

       10.     Plaintiff Jennifer Zharinova ("Zharinova") is a well-known professional model, and a resident of Los Angeles County, California.

       11.     Plaintiff Jessica 'Jessa' Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

       12.     Plaintiff Lina Posada ("Posada") is a well-known professional model, and a resident of San Bernardino County, California.

       13.     Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of Winchester, England.

       14.     Plaintiff Paola Canas ("Canas") is a well-known professional model, and a resident of Broward County, Florida.

       15.     Plaintiff Sandra Valencia ("Valencia") is a well-known professional model, and a resident of Medellin, Colombia.

       16.     Plaintiff Tiffany Toth Gray ("Toth") is a well-known professional model, and a

3

resident of Orange County, California.

17. Plaintiff Jessica Rockwell ("Rockwell") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

18. According to publicly available records, Defendant LA RUMBA RESTAURANT & NIGHTCLUB is formed under the laws of the state of Virginia. During times relevant to this action, LA RUMBA RESTAURANT & NIGHTCLUB operated La Rumba a/k/a La Rumba in Richmond, Virginia.

19. DOES 1 THROUGH 5 are certain yet-to-be-named individuals and/or entities that LA RUMBA RESTAURANT & NIGHTCLUB worked in conjunction with, at the direction of, or in concert with as pertains to the subject advertisements which contain images of Plaintiffs. On information and belief, and without limitation, such individuals and/or entities include graphic designers, independent contractors, DJs, social media consultants and/or others.

## FACTUAL ALLEGATIONS

20. As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

21. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

22. Plaintiffs' images was misappropriated, and intentionally altered, by one or

more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with La Rumba.

23.     In the case of every Plaintiff, such appearance was false.

24.     Moreover, in every case this misappropriation occurred without Plaintiffs' knowledge, consent or authorization, at no point did Plaintiffs ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

25.     Defendants' obvious intention in using Plaintiffs' images without consent or remuneration was to harm Plaintiffs by effectively forcing them to appear in Defendants' advertising for no compensation.

26.     Further, in certain cases, Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

27.     Geiger is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as *Show, Maxim* and *Raw*, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

28.     That we know of, Geiger is depicted in the photos in Exhibit "A" to promote La Rumba on its Facebook page These Images were intentionally altered to make it appear that

Geiger was either an entertainer working at La Rumba, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

29.     Geiger has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

30.     Scott is and at all times relevant to this action was, an Australian DJ and model based in Sydney and London. She's been voted by multiple magazines in the United States, United Kingdom, and Australia as one of the world's sexiest women. Scott has graced over 30 covers for publications such as *Maxim, FHM*, and 10 features for *Playboy* editions throughout Europe. She's appeared in campaigns for Wonderbra, Lipton Iced Tea, and was featured in Robbie William's show visuals to support his worldwide Rock DJ tour, following the Robbie William's show Scott was cast in US hit 'Entourage'; for an episode in series 4. She has been a contestant on 'Dancing With The Stars Australia', 'I'm A Celebrity Get Me Out Of Here' UK, 'Cirque Du Celebrity' UK and 'Love Island' UK. Scott kicked off her first DJ tour in 2008. Since then she has played support slots for legendary House DJ Erick Morillo, Defected's Sam Divine and at festivals alongside Deadmau5, Tommy Sunshine, and Skrillex. Scott has mixed high profile compilations for major record labels such as EMI and headlined tours in many corners of the world. After her extensive 10 city tour across South East Asia Scott was chosen to shoot the cover of *FHM* Malaysia's March 2015 edition as Australia's hottest export.

31.     That we know of, Scott is depicted in the photo in Exhibit "B" to promote La Rumba on its Facebook page. These Images were intentionally altered to make it appear that

Scott was either an entertainer working at La Rumba that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

32.     Scott has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

33.     Zharinova is a highly successful model and actress. Zharinova has modeled for runway, print, commercial, and theatrical jobs for Great Clips, Chevrolet Malibu, 24 Hour Fitness, Caesar's Palace, Sprint, Levi's, Aveda, Target, and Guess among others.

34.     That we know of, Zharinova is depicted in the photos in Exhibit "C" to promote La Rumba on its Facebook page. These Images were intentionally altered to make it appear that Zharinova was either an entertainer working at La Rumba, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

35.     Zharinova has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

36.     Hinton at 14 was discovered by a talent manager at a wedding. By 16 she locked in three national TV commercials and made guest appearances on *Baywatch* and *7ᵗʰ Heaven*. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the *Palms Hotel & Casino's* ad campaign. She then pursued TV personality roles hosting for *Victory Poker*, and *Top Rank Boxing* interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as *July's Playmate of the Month*

becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for *Milwaukee's Best Beer* in conjunction with *Playboy Enterprises*. Hinton also attained spokesmodel roles for *Affliction Clothing*, *Enzo*, *Milano Hair Products*, *REVIV Wellness Spa*, and *Protein World*. She has ongoing modeling contracts with *Rhonda Shear Shapewear*, *Leg Avenue,* and *Roma Costume*, in addition to hosting a Los Angeles, CA television station *KTLA*. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. She was named Creative Director for *MAJR Media* and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 4.2 million followers on Facebook, Instagram and Twitter.

37.     That we know of, Hinton is depicted in the photos in Exhibit "D" to promote La Rumba on its Facebook page. These Images were intentionally altered to make it appear that Hinton was either an entertainer working at La Rumba, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

38.     Hinton has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.     Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Besame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swinwear, Ujeans, as well as many others. She

currently has 95.1 thousand Instagram followers, 2.99 thousand YouTube subscribers, 8,931 Facebook followers, and over 5.6 thousand Twitter followers.

40.     That we know of, Posada is depicted in the photo in Exhibit "E" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Posada was either an entertainer working at La Rumba, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

41.     Posada has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

42.     Pinder is, and at all times relevant to this action was, an English model, actress, host, businesswoman, and one of Great Britain's most famous glamour models. Pinder has featured in publications such as *FHM, Nuts, Loaded, The Daily Star,* and hundreds of others. Pinder has appeared on *FHM's* list of the "100 Sexiest Women in the World" in 2005, 2006, and 2007. She was a guest columnist in *Nuts*, entitled "The Truth About Women" and appeared on the final edition of the *Nuts* magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) among others, and on large national and international advertising campaigns. Pinder has an established an acting career with many TV appearances and Film credits. She has appeared on shows such as *I'm Famous and Frightened*, *Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon,* and *Team and Bo!* in the USA. Pinder was also a contestant on *Celebrity Big Brother*. Pinder starred in films such as *The Seventeenth Kind, Age of Kill,* and *Warrior Savitri*. Pinder works closely with a number of Wildlife charities and is involved in fundraising for Tiger Time, The David

Shepherd Wildlife Foundation and International Animal Rescue. Pinder has also worked with *Help for Heroes* appearing in the *Hots Shots* fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Pinder's own annual calendar continues to be one of the bestselling model calendars year after year and enhances Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram, and Twitter.

43.     That we know of, Pinder is depicted in the photos in Exhibit "F" to promote La Rumba on its Facebook page. These Images were intentionally altered to make it appear that Pinder was either an entertainer working at La Rumba, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

44.     Pinder has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

45.     Canas is a Colombian-born model now residing and working in the United States. Canas has been in the industry for over twelve years and has found great success as a model, host, runway model, and actor. Canas has worked runway shows in her native Colombia, as well as Mexico, Ecuador, United States, and most recently in Paris, France. She heads up the international campaign and was a contracted model for Curve and their worldwide lingerie line. In Dubai, United Arab Emirates, Canas was chosen as the face of the Masters Golf Tournament, and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked for international brands and labels such as SOHO, KISS underwear, Salon International, Zona

Rosa, and Esteban Escobar. She has appeared in numerous TV shows like "FOX Sports" and on TV networks such as Telemundo and TV Azteca. Canas continues to build an impressive profile and is constantly in demand between Miami, FL, New York, NY, and Los Angeles, CA. Canas has over 545 thousand Instagram followers, over 10.5 thousand followers on Twitter, and over nine thousand Facebook likes.

46.     That we know of, Canas is depicted in the photos in Exhibit "G" to promote La Rumba on its Facebook page. These Images were intentionally altered to make it appear that Canas was either an entertainer working at La Rumba, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

47.     Canas has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

48.     Valencia is, and at all times relevant to this action was, a successful professional model with numerous accomplishments. She is regarded as one of the top models in her home country of Colombia. Valencia has modeled in Ecuador, Peru, The Dominican Republic, Mexico and Venezuela. She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of Besame Lingerie. She currently has over 141 thousand Instagram followers and over 77.6 thousand Twitter followers.

49.     That we know of, Valencia is depicted in the photos in Exhibit "H" to promote La Rumba on its Instagram page. These Images were intentionally altered to make it appear that Valencia was either an entertainer working at La Rumba, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

50.     Valencia has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

51.     Toth is an extremely successful model that takes great pride in holding the prestigious title of a *Playboy* Playmate. Toth was the *Playboy* "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under *Playboy's* Fresh Faces. Moreover, she has not only been featured in such magazines as *Super Street Bike*, *Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, but has also posed for various catalogs. Toth currently has over 3.7 million Facebook followers, 1.4 million Instagram followers, and over 305 thousand Twitter followers, and 1.08 thousand YouTube subscribers

52.     That we know of, Toth is depicted in the photos in Exhibit "I" to promote La Rumba on its Facebook page. These Images were intentionally altered to make it appear that Toth was either an entertainer working at La Rumba, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

53.     Toth has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

54.     Rockwell is a model and actress. She is well known for Angry Video Game Nerd: The Movie (2014), Immigrants (2009), and A Que No Puedes! (2007). She has also appeared on films and tv shows such as, Sons of Anarchy, Entourage, Knight Rider, Heroes and she has done music videos for Nickelback and Baby Bash. Rockwell has done prints as a

catalog Model for Dreamgirl Lingerie, No Fear Calendar, and Shift Clothing. Rockwell's modeled for Hooter's Magazine and Calendar, Extreme RC Car Magazine, and Racer X Magazine among others.

55.     That we know of, Rockwell is depicted in the photo in Exhibit "J" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Rockwell was either an entertainer working at La Rumba, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

56.     Rockwell has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

57.     Upon information and belief, Defendants operated, during the relevant time period, the Club, where they engaged in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

58.     Upon information and belief, and in furtherance of its promotion their promotion of the Club, Defendants own, operate and control the Club's social media accounts, including its Facebook, Twitter, and Instagram accounts.

59.     Defendants used the Club's Facebook, Twitter, and Instagram accounts to promote the Club, and to attract patrons thereto.

60.     Defendants did this for their own commercial and financial benefit.

61.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with

13

potential clientele that each Plaintiff either worked as an entertainer working at the Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

62.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed the Club to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

63.     As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by the Club and at no point have any of the Plaintiffs ever endorsed the Club, or otherwise been affiliated or associated with the Club.

64.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

65.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

***Standard Business Practices in the Modeling Industry***

66.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

67.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media,

14

television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1-, 2-, or 3-year terms; but almost never is there a "lifetime" term.

**_Defendants' Misappropriation of Plaintiffs' Images_**

68.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote the Club by and through various marketing and promotional mediums including, without limitation, the Club's website, Facebook and Instagram.

69.     Defendants showcased Plaintiffs' Images on the Club's social media pages to create the false impression that Plaintiffs worked at the Club, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

70.     Defendants did so to attract clientele to the Club, promote the Club, and thereby generate revenue for Defendants.

71.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed the Club.

72.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

73.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

74.     This is especially so insofar as Plaintiffs' Images have been associated with a night club, and the implication of Defendants' use of Plaintiffs' Images is that they are entertainers, endorse a night club, or are otherwise associated or affiliated with a night club.

75.    At no point were any of the Plaintiffs ever affiliated with the Club, or Defendants.

76.    Plaintiffs' Images were used without her consent.

77.    At no point were Plaintiffs ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of Plaintiffs' Images.

78.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

79.    No Defendant ever paid Plaintiffs for its use of her Images on any promotional materials, including the Club's website, Twitter, Facebook, or Instagram accounts.

80.    Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

81.    Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm.

## FIRST CAUSE OF ACTION
### (Violation of Plaintiffs' Rights of Publicity, Unauthorized Appropriation and Use of Likeness, Va. Code Ann. § 8.01-40)

82.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

83.    As set forth hereon, Plaintiffs have and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

84.    As set forth hereon, Defendants have violated Plaintiffs' statutory law rights to publicity under Virginia law.

85.    Defendants have done so by appropriating Plaintiffs' likeness for commercial

16

purposes without authority or consent.

86.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on the Club's website or related social media accounts as part of Defendants' advertising campaign.

87.     At all relevant times, the Club's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

88.     The Club's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

89.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

90.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants republicized Plaintiffs' images and likenesses on various occasions, via different mediums, after the initial date of the posting of their images and likenesses and through the filing of this complaint.

91.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' images and likenesses was altered so as to reach a new audience and/or promote a different product.

92.     Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for the Club.

93.     At no point did any Defendant ever receive permission or consent to use

17

Plaintiffs' Image on their website or social media account.

94.     Defendants were at all relevant times aware that they never received Plaintiffs'

permission or consent to use their Images on any website or social media account, or on any

other medium, in order to promote the Club.

95.     At no point did Defendants compensate Plaintiffs for their use of their Images.

96.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs'

Images.

## SECOND CAUSE OF ACTION
### (Violation of Virginia's Business Conspiracy Statute as to Each Plaintiff, Va. Code Ann. § 18.2-499/500)

97.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth hereon.

98.     On information and belief, La Rumba worked in conjunction with certain third-

party graphic designers, independent contractors, DJs, social media consultants and/or others,

named herein as DOES 1 THROUGH 5, to misappropriate Plaintiffs' images, repurpose these

images, create the subject advertisements using Plaintiffs' repurposed images, and publish the

subject advertisements on the Club's social media pages.

99.     As set forth in the hundreds of advertisements attached to the Complaint in

which Plaintiffs' images were illicitly used, La Rumba worked in conjunction with, without

limitation, DJ Hector; DJ Bam Bam; DJ Mouse; DJ Ira Vieso; DJ Travieso; DJ Criss; DJ Sam;

DJ Samm; DJ Joel the King; (collectively, the "DJs") to produce the subject advertisements and

publish them on La Rumba's social media pages.

100.    Upon information and belief, La Rumba worked in concert with the DJs on the

particular advertisements in the days and weeks leading up to the publication of each

advertisement.

101.    Upon information and belief, La Rumba also worked with graphic designers and others in the creation and publication of the advertisements.

102.    La Rumba worked in concert with these graphic designers and others in the creation and publication of the particular advertisements in the days and weeks leading up to the publication of each advertisement.

103.    As detailed in the Complaint and its exhibits, La Rumba engaged in concerted efforts with the DJs and other on hundreds of separate occasions, each occasion on or about the date of the publication of each of La Rumba's advertisements.

104.    The purpose of La Rumba's concerted effort was to deprive Plaintiffs of the fair market value of their professional modeling services that they would have obtained had La Rumba and its co-conspirators operated through legal channels, and thus secure for La Rumba free advertising.

105.    The effect of La Rumba's concerted effort was in accord with its purpose: the conduct did in fact deprive Plaintiffs of the fair market value of their professional modeling services and did in fact secure for La Rumba free advertising.

106.    Defendants La Rumba and DOES 1-5 acted with legal malice because they knew or should have known that Plaintiffs are paid for their professional modeling services, yet they used these images to secure free advertising and thus, intentionally deprived each Plaintiff of the fair market value of her professional modeling services.

107.    Defendants La Rumba and DOES 1-5 acted with legal malice because although they knew that they did not have the rights to use Plaintiffs' Images for commercial purposes, they used the images anyway.

19

108.    Defendants La Rumba and DOES 1-5 acted with legal malice because they intended to use Plaintiffs' Images and secure for themselves free advertising.

109.    In the alternative, Defendants La Rumba and DOES 1-5 acted with legal malice by acting recklessly in never investigating whether they had the right to use Plaintiffs' images in advertising.

110.    Such actions injured Plaintiffs because they did in fact deprive Plaintiffs of the fair market value of her professional modeling services.

111.    As a result of Defendants' illicit concerted efforts, including their unauthorized and misleading publication of Plaintiffs' Images on the Club's website and social media accounts, each of the Plaintiffs was injured by being deprived of the fair market value of her professional modeling services, as Defendants intended.

112.     As a result of Defendants' illicit concerted efforts, including their unauthorized and misleading publication of Plaintiffs' Images on the Club's website and social media accounts, Plaintiffs' reputations were injured, Plaintiffs' business and trades were injured, and Plaintiffs' abilities to market herself as a model were injured.

113.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including treble damages available under this statute, and all costs and attorneys' fees incurred by Plaintiffs, as available under this statute.

### THIRD CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)

114.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

115.    The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to

Defendants, and protect Plaintiffs from the conduct described hereon.

116.    As set forth hereon, each advertisement at issue in this action was false and misleading because no Plaintiff ever worked at La Rumba or agreed to appear in La Rumba's advertisements.

117.    Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

118.    Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended La Rumba.

119.    Insofar as Defendants published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

120.    Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with the Club.

121.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

122.    Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Club, and the goods and services provided by the Club.

123.    Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## FOURTH CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

124.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

125.    The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to Defendants, and protect Plaintiffs from the conduct described hereon.

126.    Defendants used Plaintiffs' Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with La Rumba, or worked at, sponsored, or approved of La Rumba's goods, services or commercial activities.

127.    This was done to promote and attract clientele to La Rumba, and thereby generate revenue for the Defendants.

128.    Thus, this was done in furtherance of Defendants' commercial benefit.

129.    Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with La Rumba nor worked at, sponsored, or approved of La Rumba's good, services or commercial activities, Defendants nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with La Rumba.

130.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

131.    Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Club, and the goods and services provided by the Club.

132.    Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a)  For actual damages in the amount of one million dollars ($1,000,000.00) relating to Plaintiffs' first through sixth causes of action, plus pre-judgment and post-judgment interest;

(b)  For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c)  For punitive damages in an amount of $350,000.

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action; and

(e)  For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

BRENDA LYNN GEIGER, EMILY SCOTT, JENNIFER ZHARINOVA, JESSICA 'JESSA' HINTON, LINA POSADA, LUCY PINDER, PAOLA CANAS, SANDRA VALENCIA, TIFFANY TOTH, and JESSICA ROCKWELL,
By Counsel

_Christine Bondi_

Timothy D. Fisher      (VSB No. 85323)
Paul T. Walkinshaw    (VSB No. 66049)
Christine A. Bondi      (VSB No. 94666)
Wharton, Levin, Ehrmantraut & Klein
10300 Eaton Place, Suite 301
Fairfax, Virginia 22030
Phone: (703) 591-9700
Fax:    (703) 591-0023
Email: tdf@wlekn.com
         ptw@wlekn.com
         cab@wlekn.com
*Local Counsel for Plaintiff*

and

John V. Golaszewski*
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
Phone: (646) 872-3178
Fax: (855) 220-9626
john@talentrights.law
*Pro Hac Vice Application Forthcoming*